HOOPER, Chief Justice.
R.W. and D.W.W. were divorced in 1996. The trial court awarded custody of the couple’s two minor children to the father, D.W.W., and granted restricted visitation rights to the mother, R.W. The Court of Civil Appeals affirmed the trial court’s order granting custody to the father but reversed its visitation order. R.W. v. D.W.W., 717 So.2d 790 (Ala.Civ.App.1997). We granted certiorari review to consider that portion of the Court of Civil Appeals’ opinion that addressed visitation privileges. We now reverse that portion of the Court of Civil Appeals’ judgment reversing the visitation provisions of the circuit court’s judgment, and we remand the case.
The visitation portion of the divorce judgment provided:
“Plaintiff [R.W.] shall be entitled to have visitation with the minor children every other weekend ... from Friday at 6:00 p.m. until Sunday at 6:00 p.m. and one evening of the intervening week; however, such visitation shall be exercised only at the maternal grandparents’ home under their supervision and control and in no event shall the children be around [N.L., the mother’s sexual partner] during any visitation period. Plaintiff shall be entitled to liberal telephone communication with the minor children....
“Neither party shall have overnight adult guests (family excluded) while [the] children are in their home and under their custody unless they are married thereto.”
This visitation order was entered after ore tenus, nonjury proceedings. In reviewing this order, we must remember that an appel *795 late court cannot substitute its own judgment for that of the trial judge. Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App.1997); see also Grubbs v. Crosson, 634 So.2d 593 (Ala.Civ.App.1994). Because the trial court has the advantage of observing the witnesses’ demeanor and has a superior opportunity to assess their credibility, this Court cannot alter the trial court’s judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong. Everett v. Everett, 660 So.2d 599, 602 (Ala.Civ.App. 1995). There is a strong presumption that the trial judge correctly exercised his discretionary authority as to visitation and correctly reached a conclusion advancing the best interests of the children. Hagler v. Hagler, 460 So.2d 187, 188 (Ala.Civ.App.1984); see also Hester v. Hester, 460 So.2d 1305, 1306 (Ala.Civ.App.1984). On our review of the record, we cannot say that the evidence contrary to the trial judge’s decision was so great as to overcome this strong presumption of correctness. Indeed, the evidence in this case indicated that these visitation restrictions were reasonably drawn to protect the best interests of the minor children.
The trial judge first restricted R.W.’s visitation to specific times in the maternal grandparents’ home and required that the grandparents supervise all such visits. Keeping in mind the presumption accorded the trial judge’s ruling, we note the following: The testimony indicated that R.W. at times displayed poor parenting skills. From the testimony before the court, the judge could have found that R.W. had hit her daughter with the buckle of a belt, leaving marks on the child. The judge heard testimony indicating that R.W. has been an impatient parent, at times even shaking her son when his medication to control his hyperactivity was wearing off. In the face of such evidence, we cannot say that the trial judge was plainly and palpably wrong in imposing restrictions on R.W.’s contact with her children. We must reiterate that our duty as an appellate court is not to reweigh the evidence. Our duty is not to supplant or deny the trial judge’s authority in order to reach the conclusions we would have advocated ourselves. In short, the duty of an appellate court is to affirm the trial court’s judgment if it is supported by any credible evidence. T.S.S. v. G.W.S., 680 So.2d 354 (Ala.Civ.App.1996); Cole v. Cole, 442 So.2d 120 (Ala.Civ.App.1983).
The record discloses a foundation of credible evidence indicating that unrestricted visitation with R.W. would not be in the best interests of the children. The restrictions placed on R.W.’s visitation are not overly broad, but were tailored to protect the children. The grandparents’ presence will act both as a buffer between the children and R.W.’s occasionally temperamental style of parenting and as a support for R.W. as she continues to develop her parenting skills. These restrictions did not constitute an abuse of discretion, but, rather, were an appropriate exercise of the trial judge’s authority to protect the children’s welfare.[1]
The trial court further restricted R.W.’s visitation with the children by requiring that the visits occur outside the presence of N.L., who is R.W.’s sexual partner. R.W. and N.L. have lived together in a lesbian relationship since November 1994. During the pendency of the divorcé action, R.W.’s children also lived in the home with R.W. and N.L. The evidence indicated that, during this time, N.L. became an active disciplinarian of the children. N.L.’s disciplinary methods were sometimes inappropriate. She threatened to deprive R.W.’s daughter of visitation with her father, as a form of punishment. The mother even admitted before the court that she personally would not choose N.L.’s methods to discipline her children, yet she continued to allow her sexual partner to punish the children harshly. Thus, the trial court could have found from the evidence presented that the children’s best interest required that they have no contact with N.L.
*796 Furthermore, the trial court did not abuse its discretion in considering the effects on the children of their mother’s ongoing lesbian relationship. Both women are active in the homosexual community. They frequent gay bars and have discussed taking the children to a homosexual church. Although they do not engage in intimate sexual contact in front of the children, they openly display affection in the children’s presence. Already, the children appear to have been detrimentally affected by their mother’s relationship and by their contacts with her sexual partner. Evidence was presented indicating that, after moving in with R.W. and N.L., the children began using inappropriate and vulgar language and required psychiatric counseling. The mother herself admits that her daughter began having problems with manipulation and lying. The evidence showed that this child also experiences problems dealing with anger and that she sometimes acts violently.
Even without this evidence that the children have been adversely affected by their mother’s relationship, the trial court would have been justified in restricting R.W.’s visitation, in order to limit the children’s exposure to their mother’s lesbian lifestyle. When a noncustodial parent is involved in a continuing homosexual relationship, restrictions on that parent’s visitation rights have been widely held to be proper. Caroll J. Miller, Annotation, Visitation Rights of Homosexual or Lesbian Parent, 36 A.L.R.4th 997 (1985). Restrictions such as those at issue here are common tools used to shield a child from the harmful effects of a parent’s illicit sexual relationships — heterosexual or homosexual.[2] Diane M. Allen, Annotation, Propriety of Provision of Custody or Visitation Order Designed to Insulate Child from Parent’s Extramarital Sexual Relationships, 40 A.L.R.4th 812 (1985). Moreover, the conduct inherent in lesbianism is illegal in Alabama. Ala.Code 1975, § 13A-6-65(a)(3). R.W., therefore, is continually engaging in conduct that violates the criminal law of this state. Exposing her children to such a lifestyle, one that is illegal under the laws of this state and immoral in the eyes of most of its citizens, could greatly traumatize them. Given both the demonstrable harm to these children that has already occurred and the potential for harm through continued exposure to their mother’s lifestyle, we cannot hold that the trial court abused its discretion in imposing these limitations on R.W.’s visitation.
The Court of Civil Appeals concluded that the trial judge had no valid basis for imposing these visitation restrictions. In reversing the order of the trial court, the Court of Civil Appeals relied primarily upon several statements made by the trial judge to the effect that he traditionally allows liberal visitation for the noncustodial parent. However, these were clearly statements of the trial judge’s general philosophy toward child custody cases. They were made before the bulk of the evidence in this case was presented. The judge could have found extenuating circumstances justifying a departure from his usual approach. The record indicates that such extenuating circumstances did indeed exist.
The trial judge had a valid basis for his visitation restrictions — he was acting in the best interests of the children. In domestic relations cases a minor child has an inalienable right to the maximum protection of the judiciary; all other rights are secondary. There was no clear abuse of discretion to justify the Court of Civil Appeals’ reversal. Although the judges of the Court of Civil Appeals might have reached a conclusion different from that of the trial judge if they had been sitting in the trial judge’s place, it was error for them to substitute their judgment for that of the trial judge. Unless the trial court is plainly wrong in its decision, an appellate court should not interfere with its discretionary rulings. This is particularly true in child custody and visitation cases, where the parties’ credibility is often the determinative factor. In these situations, the trial judge, who has actually seen and heard *797 the parties and the witnesses, is infinitely more qualified to make a decision than an appellate court, which must make its determination from a cold record.
That portion of the Court of Civil Appeals’ judgment reversing the visitation provisions of the circuit court’s judgment is reversed. The case is remanded for the Court of Civil Appeals to reinstate that portion of the circuit court’s judgment.
REVERSED AND REMANDED.
HOUSTON and BUTTS, JJ., concur.
MADDOX and SEE, JJ., concur in the result.
KENNEDY and COOK, JJ., dissent.

. Justice Kennedy's dissent discusses extensively the faults of the children's father. That discussion has no relevance to the issues before this Court. The Court of Civil Appeals affirmed the order placing the children in their father’s custody. That order has not been appealed. It is not for us to presume error where none has been presented. Our role in this case is to review the trial judge’s determination that R.W. should not have unlimited visitation with the children. The suggestion that our role in this case is anything else seriously misconstrues our judicial purpose.

. We would also note that the restriction against all overnight adult guests when the children are present in the home applies equally to both parents. The trial court made no distinction between homosexual and heterosexual relationships. The trial court’s restriction, therefore, protects the children from exposure to all extramarital sexual relationships engaged in by either parent, not just homosexual relationships.